**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

)
**SYLVIA MENIFEE,**               )
)
        **Plaintiff,**        )
)
       **v.**            )     **Civil Action No. 12-252 (RMC)**
)
**U.S. DEPARTMENT OF THE**   )
**INTERIOR,** *et al.*,         )
)
       **Defendants.**    )
_____)

## OPINION

Sylvia Menifee, an employee of the Department of the Interior, alleges that her supervisor and other Interior employees have intimidated her in the workplace and that her complaints to Interior personnel have fallen on deaf ears. Proceeding *pro se*, she brings a First Amendment claim, tort claims, and a claim under the Freedom of Information Act. Defendants have moved for summary judgment on Ms. Menifee's FOIA claim and to dismiss all other claims. For the reasons set forth below, the Court finds that Defendants have complied with the requirements of FOIA and that Ms. Menifee has failed to state a claim as to all other counts in the Amended Complaint. The Court will thus grant both of Defendants' motions. Because sovereign immunity bars some of Ms. Menifee's tort claims, the dismissal of those claims will be with prejudice, while the dismissal of the others will be without prejudice.

### I. FACTS

Ms. Menifee's Complaint and Amended Complaint are entirely devoid of any factual allegations. However, Ms. Menifee has alluded to the facts underlying her First Amendment and tort claims in various filings. In their motion for summary judgment on Ms. Menifee's FOIA claim, Defendants have included evidence and a statement of facts that Ms.

1

Menifee has not disputed.  The Court reviews the procedural history of the case, synthesizes the facts that form the basis for Ms. Menifee's First Amendment and tort claims, and then discusses the background of the FOIA claim.

### A. Procedural History

Ms. Menifee filed a cursory three-count Complaint on February 15, 2012, alleging that Interior and various individual Interior employees "recklessly made malicious and false statements about the Plaintiff," "violated [her] 1st Amendment Rights," and "intentionally withheld [her] request for records under the Freedom of Information Act (FOIA)."  Compl. [Dkt. 1] ¶¶ 1–3.  The original Complaint named five defendants: Interior, Andrew Jackson, John Ross, Tanya Henderson, and Diane Smith, all Interior employees.  The Complaint did not in any provide any factual basis for Ms. Menifee's claims.  That deficiency notwithstanding, Ms. Menifee immediately filed a Motion for Temporary Restraining Order against Mr. Ross.  [Dkt. 2].

Defendants opposed Ms. Menifee's TRO motion, Dkt. 5, and the Court held a hearing on February 24, 2012, at which it denied the TRO motion.  Defendants moved to dismiss Ms. Menifee's First Amendment and tort claims, Dkt. 7, which Ms. Menifee opposed, Dkt. 10. Defendants filed a reply brief, Dkt. 11, and Ms. Menifee, without seeking leave to do so, filed a surreply, Dkt. 12 ("Surreply").  At the same time, Ms. Menifee also filed an Amended Complaint.  [Dkt. 13].  The Amended Complaint contains five claims: (1) "[T]he supervisor and other DOI management staff[ ] recklessly and deliberately made malicious and false statements" about her; (2) "Defendant(s) violated [her] 1st Amendment Rights"; (3) "The Defendant intentionally withheld [her] request for records under [FOIA]"; (4) "The Defendant(s) tortuously [sic] caused Intentional Infliction of Emotional Distress and Negligent Infliction of Emotional Distress"; and (5) "Abuse of process by agency law enforcement." *See id.* ¶¶ 1–5.  As was the

original Complaint, the Amended Complaint is devoid of any factual allegations.  The Amended Complaint names the original five defendants—Interior, Andrew Jackson, John Ross, Tanya Henderson, and Diane Smith—and adds Steve Hargrave.[1]  The Court refers to the Defendants collectively as "Interior."

Construing Ms. Menifee's filing of an Amended Complaint as a motion to amend her complaint, Interior responded with an omnibus opposition and memorandum to dismiss ("MTD Mem.").  [Dkt. 14]; *see also* Errata [Dkt. 15].  Interior separately filed a second motion to dismiss Ms. Menifee's tort and First Amendment claims ("MTD").  [Dkt. 16].  Ms. Menifee then filed a "Response" in support of her Amended Complaint in which she argued that she should be allowed to amend her Complaint; the Court will refer to that filing as Plaintiff's Reply. [Dkt. 18] ("Pl. Mot. Amend Reply").

On May 16, 2012, Interior filed a reply brief in support of its second motion to dismiss the tort and First Amendment Claims.  Reply Pl. Resp. Defs. Mot. Dismiss [Dkt. 19] ("Def. MTD Reply").  On July 30, 2012, Interior filed an answer to the Amended Complaint. [Dkt. 23].  The following day, the Court by Minute Order construed Ms. Menifee's Amended Complaint as a motion to amend the complaint and granted the motion.  The Court also denied the first motion to dismiss as moot and directed Ms. Menifee to respond to the second motion to dismiss.  Ms. Menifee filed a response on August 28, 2012.  Pl. Resp. Def. Mot. Dismiss Tort & First Amend. Claims ("Pl. MTD Opp.") [Dkt. 27].

Separately, the Court set a briefing schedule on Ms. Menifee's FOIA claim.  The defendants moved for summary judgment, Dkt. 28 ("Def. MSJ"); Ms. Menifee filed an opposition, Dkt. 29 ("Pl. MSJ Opp."); and the defendants filed a reply brief, Dkt. 30 ("Def. MSJ

_____

[1] Interior has notified the Court that the correct spelling, used in this Opinion, is "Hargrave," not "Hargraves" as alleged in the Amended Complaint.

Reply").  At the invitation of the Court, *see* Dkt. 32, Ms. Menifee filed a supplement to her

opposition, Dkt. 35 ("Pl. MSJ Supp. Opp.").

## B. Facts

### 1. First Amendment and Tort Claims

Ms. Menifee identifies herself as an "80% disabled veteran, with 22+ years of

government service," who has worked for Interior since January 3, 2011.  Mem. Supp. TRO

[Dkt. 2] ¶¶ 1–2.  She works in the Office of Valuation Services (OVS),[2] where, at least as of

September 2011, she was the Chief of the Business and Administrative Management Division.[3]

Along with "other key members of management," Ms. Menifee's direct supervisor, John Ross, is

alleged to have subjected her to "unsettling acts of discrimination" that began "[s]hortly after her

arrival" at Interior.  *Id.* ¶ 3.  During one-on-one meetings between Ms. Menifee and Mr. Ross,

Mr. Ross has allegedly "demonstrated intimidating behaviors" that made Ms. Menifee

"concerned for her safety."  *Id.* ¶¶ 4–9.  Sometime after "late March" 2011, Ms. Menifee raised

concerns about Mr. Ross to higher-level supervisors and "Security," and even to the Secretary of

the Interior, but Mr. Ross's conduct allegedly continued, including "send[ing] [Ms. Menifee]

---

[2] According to Interior's website, OVS "is responsible for all real estate valuation functions of the Bureau of Land Management, Bureau of Reclamation, National Park Service, and U.S. Fish and Wildlife Service, including management, oversight, and valuation policy for [Interior]." Office of Valuation Services, U.S. Dep't of the Interior, http://www.doi.gov/pmb/ovs/index.cfm (last accessed March 21, 2013).

[3] In its opposition to Ms. Menifee's motion for a TRO, Interior provided the Court with documentation refuting Ms. Menifee's factual allegations, including a twenty-one-page investigative report into Ms. Menifee's allegations of a "hostile, discriminatory and violent work environment" prepared by Mr. Hargrave, *see* TRO Opp, Ex. 2 [Dkt. 5-2] (Hargrave Report), and a declaration from Diane Smith, *see id.* Ex. 4 [Dkt. 5-4].  The Court refers to Interior's documentation only to the extent that doing so helps the Court construe Ms. Menifee's Amended Complaint.  For example, Ms. Menifee's title as of September 2011 appears on an e-mail sent by Ms. Menifee that is attached as an exhibit to the Smith Declaration.  As required on a motion to dismiss, the Court otherwise disregards Interior's documentation and accepts Ms. Menifee's allegations as true.

harassing emails at odd times." *Id.* ¶¶ 4, 15–21.  Ms. Menifee began experiencing "fear and work related stress" and was sometimes unable to go to work, including around the holiday season of 2011. *Id.* ¶¶ 16–17.  After January 9, 2012, she felt that "[t]he level of harassment" from Mr. Ross became "unbearable." *Id.* ¶ 20.  Ms. Menifee thus sought a TRO requiring that "all contact" between her and Mr. Ross "cease," notwithstanding that "[t]he nature of [Ms. Menifee's] work does not require" direct contact with Mr. Ross. *Id.* at 5.  During the TRO hearing, Ms. Menifee reiterated repeatedly that her primary concerns were that meetings requested by Mr. Ross were "deceptive," his behavior at such meetings was "aggressive," and the Interior chain of command had not addressed the issues despite her complaints.  Feb. 24, 2012 Hr'g Tr. at 10–12.

In her filings, Ms. Menifee references an "incident on April 2, 2012" in which Mr. Hargrave is alleged to have "deliberately impersonated law enforcement" in a "planned and pre-mediated action." Pl. Mot. Amend Reply at 2.  Ms. Menifee asserts that Mr. Hargrave "was charged by his co-defendants to conducted [sic] an investigation into [her] safety, which he was not authorized to do" and "abused his position and authority over her." *Id.* at 2–3.  On this occasion, Ms. Menifee allegedly was "denied entry to the Department of Interior building [ ] by a security supervisor accompanied by representatives of HR."  Surreply, Ex. 1 (E-mail from David Shapiro[4]) at 1; *see also* Surreply at 3 (referring to a "gang of seven (7) insubordinate DOI employees (5 security officials and 2 Human Resources personnel)").  Ms. Menifee asserts that "building security had been given a photography of her" and been "told to call [Mr. Hargrave] if and when she entered the building."  Shapiro E-mail at 1.  Interior security contacted Mr. Hargrave when Ms. Menifee attempted to enter, and he denied Ms. Menifee permission to enter

---

[4] Ms. Menifee was represented by counsel David Shapiro during her EEO proceedings.  Mr. Shapiro has not entered an appearance in this case.

the building. *Id.* When Ms. Menifee "attempted to go through and scan her ID," Mr. Hargrave "had another male building security guard block her path." *Id.* Ms. Menifee felt "utterly humiliated" by this event. *Id.*

Separately, Ms. Menifee refers to events that occurred on June 13, 2012, during which "Mr. Hargrave[] had [her] detained for a second time and would not allow her to exit the DOI headquarters building with her personal belongings until he conducted a search of them." Pl. MTD Opp. at 2. This second incident, about which no additional facts are in the record, postdates the filing of the Amended Complaint.

### 2. FOIA Claim

Ms. Menifee submitted two FOIA requests to the Office of the Secretary of the Department of the Interior: one on June 30, 2011, and the other on September 29, 2011. Julka Decl., Def. MSJ Ex. [Dkt. 28-1] ¶ 5.

### i. June 30, 2011 Request

The June 30, 2011 request sought 24 categories of documents, mostly e-mail correspondence among certain individuals. Specifically, Ms. Menifee requested:

> a. All emails between John Ross (john@johnwross.net; JohnRoss@ios.doi.gov) and Tanya Henderson (TanyaEHenderson @nbc.gov) from January 2011 to present.
>
> b. All emails between John Ross(john@johnwross.net; John_Ross@ios.doi.gov) and Dave Damron (DaveDamron @nbc.gov) from January 2011 to present.
>
> c. Email from John Ross to Andrew Jackson on or around May 13 in which Mr. Ross mentions "issues in the DC office is spreading to the field."
>
> d. Email between John Ross and Eric Alvarez on June 28, 2011.
>
> e. All emails between Tanya Henderson and Dave Damron from January 2011 to present.

f. All emails between Alex Glade and Danielle Dzidzienyo from May 5, 2011 to present regarding relocation.

g. All emails between Alex Glade and John Ross from May 5, 2011 to present regarding relocation.

h. All emails between Alex Glade and Yolanda Jamison from May 5, 2011 to present regarding relocation.

i. Email(s) from Danielle Dzidzienyo to John Ross on or about May 12, 2011 regarding the relocation of Alex Glade; email subject line: "Email and other documentation relating to relocation of Alex Glade."

j. Email(s) from Yolanda Jamison to John Ross on or about May 12, 2011 regarding the relocation of Alex Glade; email subject line: "Email and other documentation relating to relocation of Alex Glade."

k. All emails between Danielle Dzidzienyo and Tanya Henderson from February 2011 to present.

l. All emails from Danielle Dzidzienyo (DanielleDzidzienyo @ios.doi.gov) to Yolanda Jamison (YolandaJamison@nbc.gov; JamisonYolanda@yahoo.com and yjamison@ufl.edu) from January 3, 2011 to present.

m. All emails from Danielle Dzidzienyo to John Ross (JohnRoss@ios.doi.gov) from April 2011 to present.

n. All emails between Danielle Dzidzienyo to Eric Alvarez from January 2011 to present.

o. All emails from Yolanda Jamison (Yolanda Jamison@nbc.gov; JamisonYoIanda@yahoo.com; and yjamison@ufl.edu) to Danielle Dzidzienyo (Danielle Dzidzienyo@ios.doi.gov) from January 3, 2011 to present.

p. All emails from Yolanda Jamison (Yolanda Jamison@nbc.gov) to Yolanda Jamison (JamisonYolanda@yahoo.com; and yjamison@ufl.edu) from January 3, 2011 to present.

q. All emails from Yolanda Jamison (Yolanda Jamison@nbc.gov) to Robert Davidoff (Robert L Davidoff@nbc.gov) from January 3, 2011 to present.

r. June 10, 2011 email from Yolanda Jamison (YolandaJamison@nbc.gov) to Michael Jurach regarding limited inquiry.

s. All emails from Yolanda Jamison (Yolanda Jamison@nbc.gov) to Ricardo Wiley-Pitts from February 2011 to June 17, 2011.

t. All emails between Yolanda Jamison (YolandaJamison @nbc.gov) and Todd Stedeford from February 2011 to June 17, 2011.

u. All emails between Yolanda Jamison and Tanya Henderson from February 2011 to June 17, 2011.

v. All emails between Yolanda Jamison and John Ross from April 2011 to June 17, 2011.

w. All emails between Yolanda Jamison and Eric Alvarez from January 2011 to June 17, 2011.

x. Copy of the investigative report for [Office of Valuation Services (OVS)] "Limited Inquiry" completed in June 2011.

Julka Decl. ¶ 7.

On July 5, 2011, the Office of the Secretary forwarded the request to the National Business Center and OVS for processing. *Id.* ¶ 8. The Office of the Secretary released 1576 pages to Ms. Menifee in their entirety in nine batches in June and July 2012. *Id.* ¶¶ 13–21. On September 28, 2012, the Office of the Secretary released 965 pages with partial withholdings pursuant to FOIA Exemptions 5 and 6. *Id.* ¶ 22.

### ii. September 29, 2011 Request

In the September 29, 2011 request, Ms. Menifee requested the following:

a. All emails between John Ross and Tamara Lukjanczuk from May 2011 to present.

b. All emails between John Ross and Diane Smith (BOEMRE) from August 2011 to present.

c. All emails between John Ross and Maggie Torres from August 2011 to present.

  d. Copy of John Ross's outlook calendar from August 8, 2011 to present.

  e. All emails between Andrew Jackson and Diane Smith (BOEMRE) from September 2011 to present.

Julka Decl. ¶ 24.

  The Office of the Secretary forwarded the request to the National Business Center and to the individuals named in the request for a search for responsive records. *Id.* ¶ 25.  On April 2, 2012, the Office of the Secretary released 913 pages to Ms. Menifee with partial withholdings pursuant to Exemptions 5 and 6. *Id.* ¶ 27.

## II.  LEGAL STANDARDS

### A.  Rule 12(b)(1)

  Pursuant to Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss a complaint, or any portion thereof, for lack of subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1).  When reviewing a motion to dismiss for lack of jurisdiction under Rule 12(b)(1), a court must review the complaint liberally, granting the plaintiff the benefit of all inferences that can be derived from the facts alleged. *Barr v. Clinton*, 370 F. 3d 1196, 1199 (D.C. Cir. 2004). Nevertheless, "the court need not accept factual inferences drawn by plaintiffs if those inferences are not supported by facts alleged in the complaint, nor must the Court accept plaintiff's legal conclusions." *Speelman v. United States*, 461 F. Supp. 2d 71, 73 (D.D.C. 2006).

  To determine whether it has jurisdiction over the claim, a court may consider materials outside the pleadings. *Settles v. U.S. Parole Comm'n*, 429 F.3d 1098, 1107 (D.C. Cir. 2005).  No action of the parties can confer subject matter jurisdiction on a federal court because subject matter jurisdiction is an Article III and a statutory requirement. *Akinseye v. District of Columbia*, 339 F.3d 970, 971 (D.C. Cir. 2003).  The party claiming subject matter jurisdiction

bears the burden of demonstrating that such jurisdiction exists. *Khadr v. United States*, 529 F.3d

1112, 1115 (D.C. Cir. 2008); *see Kokkonen v. Guardian Life Ins. Co. of America*, 511 U.S. 375,

377 (1994) (noting that federal courts are courts of limited jurisdiction and "[i]t is to be

presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the

contrary rests upon the party asserting jurisdiction" (internal citations omitted)).

### B. Rule 12(b)(6)

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6)

challenges the adequacy of a complaint on its face, testing whether a plaintiff has properly stated

a claim. Federal Rule of Civil Procedure 8(a) requires that a complaint contain "a short and plain

statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). A

complaint must be sufficient "to give a defendant fair notice of what the . . . claim is and the

grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal

citations omitted). Although a complaint does not need detailed factual allegations, a plaintiff's

obligation to provide the grounds of his entitlement to relief "requires more than labels and

conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* The

facts alleged "must be enough to raise a right to relief above the speculative level." *Id.* Rule

8(a) requires an actual showing and not just a blanket assertion of a right to relief. *Id.* at 555 n.3.

"[A] complaint needs *some* information about the circumstances giving rise to the claims."

*Aktieselskabet Af 21. Nov. 2001 v. Fame Jeans, Inc.*, 525 F.3d 8, 16 n.4 (D.C. Cir. 2008)

(emphasis in original).

In deciding a motion under Rule 12(b)(6), a court may consider the facts alleged

in the complaint, documents attached to the complaint as exhibits or incorporated by reference,

and matters about which the court may take judicial notice. *Abhe & Svoboda, Inc. v. Chao*, 508

F.3d 1052, 1059 (D.C. Cir. 2007) (internal quotation marks and citation omitted). To survive a

motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is "plausible on its face." *Twombly*, 550 U.S. at 570.  When a plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged, then the claim has facial plausibility. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*.

A court must treat the complaint's factual allegations as true, "even if doubtful in fact." *Twombly*, 550 U.S. at 555.  But a court need not accept as true legal conclusions set forth in a complaint. *Iqbal*, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*.  "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.  When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.

### C. Summary Judgment

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment must be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986).  Moreover, summary judgment is properly granted against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true.

*Anderson*, 477 U.S. at 255.  A nonmoving party, however, must establish more than "[t]he mere existence of a scintilla of evidence" in support of its position.  *Id.* at 252.

FOIA cases are typically and appropriately decided on motions for summary judgment.  *Miscavige v. IRS*, 2 F.3d 366, 368 (11th Cir. 1993); *Rushford v. Civiletti*, 485 F.Supp. 477, 481 n.13 (D.D.C. 1980).  In a FOIA case, the Court may award summary judgment solely on the basis of information provided by the department or agency in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith."  *Military Audit Project v. Casey*, 656 F.2d 724, 738 (D.C. Cir. 1981); *see also Vaughn v. Rosen*, 484 F.2d 820, 826-28 (D.C. Cir. 1973).  An agency must demonstrate that "each document that falls within the class requested either has been produced, is unidentifiable, or is wholly [or partially] exempt from the Act's inspection requirements."  *Goland v. CIA*, 607 F.2d 339, 352 (D.C. Cir. 1978) (internal citation and quotation omitted).

### III.  ANALYSIS

The Court addresses Interior's motion to dismiss before turning to the motion for summary judgment on Ms. Menifee's FOIA claim.[5]

### A.  Motion to Dismiss First Amendment and Tort Claims

Against all six defendants, Ms. Menifee alleges defamation (Count I), violation of her First Amendment rights (Count II), intentional infliction of emotional distress and negligent

---

[5] The Court has federal question jurisdiction over Ms. Menifee's FOIA claim and First Amendment claim, *see* 28 U.S.C. § 1331, and supplemental jurisdiction over her common law claims, *see* 28 U.S.C. § 1367.  Venue is proper in this Court under 28 U.S.C. § 1391(b).

infliction of emotional distress (Count IV), and abuse of process (Count V).  Interior raises two

arguments: first, Ms. Menifee has failed to state a claim on which relief can be granted, and

second, sovereign immunity bars the tort claims.   MTD Mem. at 6.

### 1.  Failure to State a Claim

As to Ms. Menifee's First Amendment claim, Interior argues that Ms. Menifee

"fails to describe what First Amendment rights are implicated or how Defendants interfered with

the conduct of those rights."  MTD Mem. at 7.  Interior contends that "[Ms. Menifee] has not

identified any speech or how her workplace relationship with Defendants addressed a matter of

public concern."  *Id.* at 7 n.6.  As to Ms. Menifee's tort claims, Interior asserts that the Amended

Complaint contains only "[l]abels and conclusion[s]" with "[n]o further explanation."  *Id.* at 8.

Even looking beyond the face of the Amended Complaint to Ms. Menifee's Surreply and other

filings, Interior argues, dismissal is required because "[Ms. Menifee's] description of the event

that she was 'denied entry into the Department of the Interior building where she worked' and

that she was 'unlawfully detained' does not state a claim."  *Id.* at 8 n.8.  The extent of Ms.

Menifee's argument in response to both arguments is that she has "provided the facts as required

by the FRCP."  Pl. Mot. Amend Reply at 3; *see also* Pl. MTD Opp. at 3 ("[T]he Pro Se Plaintiff

strongly believes that she has and met all requirements of the court and the Federal Rules of

Civil Procedure . . . .").

The Court concludes that Ms. Menifee has failed to state a claim for a violation of

her First Amendment rights or for defamation, intentional infliction of emotional distress,

negligent infliction of emotional distress, or abuse of process.  Neither the Complaint nor the

Amended Complaint contains any facts on which such claims might be based.  The Amended

Complaint consists of nothing more than "labels[,] conclusions, and a formulaic recitation of the

elements of [the] cause[s] of action."  *Twombly*, 550 U.S. at 555; *see also Iqbal*, 556 U.S. at 678

("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

Even scouring the record to cobble together factual allegations from all of Ms. Menifee's pro se filings is insufficient to save the Amended Complaint.  Ms. Menifee only makes reference to "unsettling acts of discrimination," Mem. Supp. TRO ¶ 3, "unbearable" harassment, *id.* ¶ 20, an "unauthorized" "investigation into [her] safety," Pl. Mot. Amend Reply 2–3, and an "abuse[]" of "position and authority," *id.*, without any facts to demonstrate what she means and what Interior needs to answer.  As currently formulated, Ms. Menifee's allegations are insufficient to state a claim for a violation of her First Amendment rights, *see Thompson v. District of Columbia*, 428 F.3d 283, 285–86 (D.C. Cir. 2005) (elements of First Amendment claim), defamation, *Jankovic v. International Crisis Group*, 494 F.3d 1080, 1087 (D.C. Cir. 2007) (elements of defamation claim), intentional infliction of emotional distress, *Ross v. DynCorp*, 362 F. Supp. 2d 344, 358 (D.D.C. 2005) (elements of intentional infliction of emotional distress claim), negligent infliction of emotional distress, *Rice v. District of Columbia*, 774 F. Supp. 2d 25, 33 (D.D.C. 2011) (elements of negligent infliction of emotional distress claim), or abuse of process, *Scott v. District of Columbia*, 101 F.3d 748, 756 (D.C. Cir. 1996) (elements of abuse of process claim).[6]  Even construing her allegations regarding the April 2, 2012 incident more broadly to allege false imprisonment or false arrest, Ms. Menifee's

---

[6] To the extent that Ms. Menifee's allegations might fit under the rubric of employment discrimination—e.g., a claim of hostile work environment or retaliation for complaining about Mr. Ross—Ms. Menifee stated at the TRO hearing that she had filed an Equal Employment Opportunity complaint raising such claims and she is pursuing it separately.  Feb. 24, 2012 Hr'g Tr. at 9–10.  The Court lacks jurisdiction over such claims until administrative remedies are exhausted.  Similarly, to the extent that Ms. Menifee may seek to allege a Whistleblower Protection Act claim, *e.g.* 5 U.S.C. § 2302(b)(8), it would also require exhaustion of administrative remedies, and there is no evidence here that Ms. Menifee filed any such administrative claim.

allegations do not state a claim because she contends only that she was prohibited from entering the Interior office building. *See Lyles v. Micenko*, 468 F. Supp. 2d 68, 74 (D.D.C. 2006) (discussing false imprisonment and false arrest and noting that "[t]he main component of a claim for false arrest or false imprisonment is an unlawful detention").

Ms. Menifee has thus failed to state a claim as to Counts I, II, IV, and V, and her Amended Complaint must be dismissed as to those counts.

## 2. Sovereign Immunity

Assuming *arguendo* that Ms. Menifee stated a claim, her Amended Complaint must nonetheless be dismissed as to her defamation, intentional and negligent infliction of emotional distress, and abuse of process claims due to sovereign immunity.  It is "axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction."  *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *see also Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994) (absent a specific waiver, the United States government is protected from suit by the doctrine of sovereign immunity).  In addition, sovereign immunity bars suits for money damages against public officials sued in their official capacities absent a specific waiver by the government. *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984).

The exclusive remedy for torts committed by Government employees in the scope of their employment is a suit against the Government itself under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671-2680.  In other words, the FTCA works as a limited waiver of sovereign immunity.  *Sloan v. Dep't of Housing and Urban Dev.*, 236 F.3d 756, 759 (D.C. Cir. 2001).  Further, the FTCA bars claimants from bringing suit until they have exhausted their administrative remedies, which includes the requirement that claimants first bring their claims to the agency, and that the claims have been denied by that agency.  *McNeil v. United*

*States*, 508 U.S. 106, 111, 113 (1993); *see also* 28 U.S.C. § 2675(a). The exhaustion

requirement is jurisdictional. *GAF Corp. v. United States*, 818 F.2d 901, 904 (D.C. Cir. 1987).

Because the exhaustion requirement is jurisdictional, Interior's motion to dismiss falls under

Federal Rule of Civil Procedure 12(b)(1), and in evaluating whether Ms. Menifee has satisfied

the exhaustion requirement, the Court may consider evidence outside of the pleadings. *See*

*Settles*, 429 F.3d at 1107.

Interior argues that sovereign immunity bars Ms. Menifee's claims against

Interior and all of the individual defendants, who were employees of Interior. MTD Mem. at 9–

13. The Court agrees. Ms. Menifee has not alleged that the United States has waived sovereign

immunity. Although the FTCA operates as a limited waiver of sovereign immunity in some

circumstances, Ms. Menifee has not alleged that she complied with the FTCA's prerequisites for

waiver. By sworn declaration, Interior confirms that Ms. Menifee never filed any administrative

claim. Decl. Charles B. Wallace, Mem. MTD Ex. 2 [Dkt. 15-2]. Furthermore, all of the named

employee defendants—Andrew Jackson, John Ross, Tanya Henderson, Diane Smith, and Steve

Hargrave—were acting within their official capacities during the events alleged by Ms. Menifee,

as confirmed by the Amended Complaint. Interior has filed certifications establishing that each

individual defendant was acting within the scope of his or her employment at the time of the

allegations. *See* Cert. Rudolph Contreras, TRO Opp. Ex. 1 [Dkt. 5-1] (as to Messrs. Jackson and

Ross and Ms. Henderson and Smith), MTD Opp. Ex. 1 [Dkt. 15-1] (as to Mr. Hargrave). Other

than the bald declaration in her briefs that she exhausted her remedies, *e.g.*, Surreply at 2 (stating

that "all remedies were exhausted"), Ms. Menifee provides no facts or evidence in support. Her

statement alone is insufficient in light of Interior's evidence. *See Kowal v. MCI Commc'ns*

*Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986))

(holding that a court is not required to "accept legal conclusions cast in the form of factual allegations").  The Court thus lacks jurisdiction to hear any of Ms. Menifee's tort claims under the FTCA because she has not exhausted her administrative remedies.

Even with exhaustion of administrative remedies, Ms. Menifee's claims of defamation and abuse of process would fail because the FTCA does not waive sovereign immunity for those particular torts.  *See* 28 U.S.C. § 2680(h) (exempting from the FTCA "[a]ny claim arising out of," *inter alia*, "false imprisonment, false arrest, malicious prosecution, abuse of process, libel, [and] slander"); *see also Sottile v. United States*, 608 F. Supp. 1040, 1042 (D.D.C. 1985) (applying § 2680(h)).  Ms. Menifee attempts to shoehorn her claim against Mr. Hargrave into § 2680(h)'s exception for claims of "assault, battery, false imprisonment, false arrest, abuse of process, or malicious prosecution" against "investigative or law enforcement officers of the United States Government."  *See* Pl. MTD Opp. 2 ("Mr. Hargrave stands alone from the U.S. Government because the acts he committed were outside the scope of his employment. . . . [T]orts involving Mr. Hargrave do not require a waiver of Sovereign Immunity. It should be documented for the Court that Mr. Hargrave works within DOI, Office of Law Enforcement & Security.").  But accepting Ms. Menifee's argument would require ignoring her abject failure to plead exhaustion, much less plead that Mr. Hargrave is an "investigative or law enforcement officer."

Moreover, a claim of abuse of process against Mr. Hargrave would not be covered by the FTCA's waiver of sovereign immunity because he is a "Supervisory Security Officer" at Interior whose duties are, *inter alia*, "interpreting and implementing DOI security policies, procedures, principles, and techniques."  Decl. Steven T. Hargrave, Def. MTD Ex. 3 [Dkt. 15-3] ¶¶ 1–2.  Mr. Hargrave's position does not authorize him to conduct searches, seize evidence, or

make arrests, *id.* ¶ 3, meaning that he is not an "investigative or law enforcement officer" as defined within the relevant provision of the FTCA.  *See* 28 U.S.C. § 2680(h) ("For the purpose of this subsection, 'investigative or law enforcement officer' means any officer of the United States who is empowered by law to execute searches, to seize evidence, or to make arrests for violations of Federal law.").  Ms. Menifee's response on this point—that "Mr. Hargrave[,] who is not law enforcement, was charged by his co-defendants to conducted [sic] an investigation into the Plaintiff's safety, which he was not authorized to do[,] and provided unverified/unsworn testimony [at the TRO hearing], which demonstrates his lack of qualifications," Pl. Mot. Amend Reply at 2–3—is nonresponsive to the requirement imposed by 28 U.S.C. § 2680(h) and, at any rate, does not satisfy the legal standard.  *See Iqbal*, 556 U.S. at 678 (requiring "more than a sheer possibility that a defendant has acted unlawfully").  Thus, sovereign immunity would bar an abuse of process claim against Mr. Hargrave even had Ms. Menifee exhausted her administrative remedies and filed a proper complaint.

### 3.  Conclusion

For the foregoing reasons, the Court will grant Interior's motion to dismiss Ms. Menifee's First Amendment and tort claims, alleged in Counts I, II, IV, and V.  The dismissal will be with prejudice as to Counts I and V, the claims of defamation and abuse of process, because sovereign immunity is not waived as to those torts.  The dismissal is without prejudice as to the First Amendment claim (Count II) and the intentional and negligent infliction of emotional distress claim (Count IV).

### B.  FOIA Claim

Interior has moved for summary judgment on Count III, Ms. Menifee's claim that "[t]he Defendant intentionally withheld [her] request for records under [FOIA]."  Interior argues that: (1) it has conducted an adequate and reasonable search, Def. MSJ Mem. 4–5; (2) it has

"released all responsive, non-exempt records in response to [Ms. Menifee's] FOIA request," *id.* at 5–6; (3) its withholdings pursuant to Exemption 5 were proper, *id.* at 6–14; (4) its withholdings pursuant to Exemption 6 were proper, *id.* at 14–19; and (5) it produced all reasonably segregable, non-exempt information, *id.* at 20–21.

In her opposition to Interior's motion for summary judgment, Ms. Menifee argues that Interior "unlawfully withheld numerous records from the Plaintiff without just cause and merit, alleging and asserting false exemption claims (Exemption 5 and Exemption 6) to circumvent discovery." Pl. MSJ Opp. [Dkt. 29] at 2. She avers that there is no "way to determine what records were withheld" and that "incriminating emails were withheld from [her] to protect the Defendants against [her] civil law suit." *Id.* She further argues that "due to the oversight of Defendant Andrew Jackson, the agency still refused to release emails [ ] to protect[ ] his interest." *Id.* Ms. Menifee relies heavily on three memoranda—one from President Barack Obama, one from Attorney General Eric Holder, and one from Secretary of the Interior Kenneth Salazar—that all reflect the Obama administration's policy that FOIA "should be administered with a clear presumption . . . [that] openness prevails." *See* Pl. MSJ Supp. Op., Exs. 1–3 (policy memoranda).

Ms. Menifee asserts that Interior's invocation of FOIA exemptions is "contradictory of the directives of the President, the Attorney General, and the Secretary [of] DOI" and is merely a "ploy by the agency for [its] noncompliance." *Id.* at 4. Ms. Menifee contends that Exemption 5 cannot apply here because she requested "emails," not "memorandums or letters." Pl. MSJ Opp. at 2. She also argues that an "[a]ttorney client privilege claim in this case is erroneous and did not apply" because "the emails requested did not involve conversations between DOI attorneys and staff." Pl. MSJ Supp. Opp. at 4. Interior's

claim of attorney-client privilege under Exemption 6 fails, Ms. Menifee contends, because the e-mails she requests "consist of email communications between non-Office of the Solicitor attorneys." *Id.*  Ms. Menifee also argues that Interior cannot invoke Exemption 6 because the documents she requested "did not involve conduct of the [Office of the Solicitor]" and "the privacy interest in this matter was that of [her]."  Pl. MSJ Supp. Opp. at 5.[7]

The Court has reviewed the evidence submitted by Interior and concludes that Interior has met its FOIA obligations.  First, its search was reasonable.  The adequacy of a search is measured by a standard of reasonableness and depends on the individual circumstances of each case.  *Truitt v. Dep't of State*, 897 F.2d 540, 542 (D.C. Cir. 1990).  The question is not whether other responsive documents may exist, but whether the search itself was adequate.  *Steinberg v. United States Dep't of Justice*, 23 F.3d 548, 551 (D.C. Cir. 1994).  Before it can obtain summary judgment in a FOIA case, "an agency must show, viewing the facts in the light most favorable to the requester, that . . . [it] has conducted a search reasonably calculated to uncover all relevant documents."  *Id.*  There is no requirement that an agency search every record system, but the agency must conduct a good faith, reasonable search of those systems of records likely to possess the requested information.  *Blanton v. U.S. Dep't of Justice,* 182 F. Supp. 2d 81, 84 (D.D.C. 2002).  Interior has submitted the Declaration of Clarice Julka, a FOIA officer with Interior's Office of the Secretary, who handled both of Ms. Menifee's FOIA requests.  The Julka Declaration establishes that Interior's Office of the Secretary processed both of Ms. Menifee's

---

[7] Ms. Menifee further contends that Interior "is in contempt and should be fined, penalized, and judgment . . . ruled in favor of the Plaintiff" because Interior has "demonstrate[d] a lack of regard to Federal laws and regulations and the authority of the Court."  Pl. MSJ Opp. at 3; *see also* Pl. MSJ Supp. Opp. at 2 (arguing that "[a]fter being granted three extensions of time to respond, the agency deliberately failed to respond to the Court[']s order to provide records by July 30, 2012").  The Court rejects these arguments, which depend on Ms. Menifee's erroneous belief that the Court's grant of extensions of time to file an answer to the Amended Complaint, *e.g.*, Minute Order dated July 5, 2012, demonstrates a violation of Interior's FOIA obligations.

FOIA requests and forwarded them to other offices for searches in accord with the type of information that Ms. Menifee requested.  *See Steinberg*, 23 F.3d at 551.  The first request was submitted to Interior's National Business Center and the OVS for processing, while the second request was submitted to the National Business Center and the individuals named in the request. Julka Decl. ¶¶ 8, 25.  Because Ms. Menifee requested "records relating to emails and office activities of the [OVS]," Def. MSJ Mem. at 4, the OVS, National Business Center, and the persons whose e-mails were requested were those likely to be in possession of responsive records.  Those entities and persons performed the searches, and a number of records were produced to Ms. Menifee.  Julka Decl. ¶¶ 8, 10–11, 13–22, 25, 27.  The Court thus finds that Interior's search was adequate and reasonable.

Second, in response to Ms. Menifee's two requests, Interior produced a total of 1576 pages in their entirety and 1878 pages with partial withholdings pursuant to Exemptions 5 and 6.  Julka Decl. ¶¶ 13–22, 25, 27.  Before turning to the specific exemptions, the Court finds unavailing any reliance on President Obama's January 21, 2009 FOIA policy memorandum and the other memoranda issued by government officials pursuant to the President's memorandum. President Obama's memorandum specifically stated that it did "not create any right or benefit, substantive or procedural, enforceable at law or in equity by any party against the United States, its departments, agencies, or entities, its officers, employees, or agents, or any other person." Presidential Memorandum, 74 Fed. Reg. 4683, 4683–84 (Jan. 21, 2009).  The President's memorandum and the others cited by Ms. Menifee merely established policy; they did not, and could not, change the legal requirements of FOIA as adopted by Congress.  *See Lewis v. Dep't of Justice*, 867 F. Supp. 2d 1, 24 (D.D.C. 2011) (rejecting similar argument).

The Court reviews each claimed exemption in turn.  Under Exemption 5, an agency need not produce "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency[.]"  5 U.S.C. § 552(b)(5).  Exemption 5 encompasses all documents "normally privileged in the civil discovery context[,]" including attorney work product and attorney-client communications. *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149 (1975); *see also Formaldehyde Inst. v. Dep't Health and Human Servs.*, 889 F.2d 1118, 1121 (D.C. Cir. 1989), *overruled on other grounds by Nat'l Inst. of Military Justice*, 512 F.3d 677 (D.C. Cir. 2008).  Documents covered by the deliberative process privilege are "documents reflecting advisory opinions, recommendations and deliberations comprising part of a process by which governmental decisions and policies are formulated." *Sears, Roebuck & Co.*, 421 U.S. at 150 (internal citation and quotation marks omitted).  Such documents are protected under Exemption 5 "to enhance the quality of agency decisions by protecting open and frank discussion among those who make them within the Government." *Dep't of the Interior v. Klamath Water Users Protective Ass'n*, 532 U.S. 1, 9 (2001) (internal citation, modification, and quotation marks omitted).

Pursuant to Exemption 5, Interior has withheld: (1) policy document drafts; (2) legal advice to Interior personnel; (3) internal communications related to other litigation; and (4) conference call numbers and passwords.  The policy document drafts are internal Interior documents that reflect discussions amongst superiors and subordinates about an "overhaul" of OVS, the office in which Ms. Menifee worked.  Julka Decl. ¶¶ 29–30.  Under personnel legal advice, Interior has withheld "confidential communications between [Office of the Solicitor (SOL)] attorneys, confidential communications between [SOL] attorneys and OVS employees[, and] a confidential communication within OVS encompassing opinions provided by

SOL based on confidential, client-supplied facts." *Id.* ¶ 31.  The communications dealt with

"particular issues associated with several Equal Employment Opportunity (EEO) claims." *Id.*

¶ 32.  The "other litigation" category includes documents similar to those withheld as "personnel

legal advice" but pertaining to "appraisal litigation" instead of EEO matters. *Id.* ¶¶ 34–37.

Finally, Interior withheld private conference-call pass codes and telephone numbers that it

purchased "as an ordinary commercial buyer." *Id.* ¶¶ 38–39.

        The categories of information withheld by Interior under Exemption 5 fit within

that exemption as interpreted by the courts, either as work product or under the deliberative

process privilege.[8]  Contrary to Ms. Menifee's argument, she is not entitled to the e-mails she

seeks just because the FOIA statute protects from disclosure only "memorandums and letters."

E-mails are often today's equivalent of what would have been memorandums in another decade.

Where all or some of the information contained in a document—whether e-mail, letter,

memorandum or otherwise—is protected by Exemption 5 and the sworn declaration submitted

by an agency supports that classification, as Interior has done with the Julka Declaration, the

agency need not release the document or can redact exempt portions. *See, e.g.*, *Coastal States

Gas Corp. v. Dep't of Energy*, 617 F.2d 854, 866 (D.C. Cir. 1980) (holding that Exemption 5

"covers recommendations, draft documents, proposals, suggestions, and other subjective

documents which reflect the personal opinions of the writer rather than the policy of the

agency.").  Moreover, in light of the Julka Declaration, Ms. Menifee's bald assertions, such as

that "the emails requested did not involve conversations between DOI attorneys and staff" and

that Interior is using Exemption 5 as an "excuse not to release the records," are insufficient to

---

[8] Interior redacted "conference call numbers and passwords," which are not covered by
Exemption 5's work-product and deliberative-process privileges.  However, Ms. Menifee
acknowledges that she "was not interest[ed] in obtaining conference call numbers and
passwords."  Pl. Supp. MSJ Opp. at 4.

survive summary judgment. *See Schoenman v. FBI*, 573 F. Supp. 2d 119, 134 (D.D.C. 2008) ("In opposing a motion for summary judgment or cross-moving for summary judgment, a FOIA plaintiff must offer more than conclusory statements." (citations omitted)).

Exemption 6 permits an agency to withhold from disclosure "personnel and medical files and similar files" if their disclosure would "constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). To support a withholding under Exemption 6, an individual's privacy rights are balanced against the public's interest in disclosure. *See Dep't of the Air Force v. Rose*, 425 U.S. 352, 372–73 (1976). "[T]he only relevant 'public interest in disclosure' to be weighed in this balance is the extent to which disclosure would serve the 'core purpose of the FOIA,' which is 'contributing significantly to public understanding of the operations or activities of the government.'" *Dep't of Def. v. Federal Labor Relations Auth.*, 510 U.S. 487, 495 (1994) (citations omitted).

Interior has withheld the following categories of information under Exemption 6: (1) e-mail addresses, (2) personnel matters, (3) personal health, (4) personal health of third parties, and (5) days that employees take leave. Julka Decl. ¶¶ 40–44. The e-mail addresses at issue include employees' personal e-mail addresses. *Id.* ¶ 40. Under personnel matters, Interior has withheld information employees shared with supervisors regarding "personnel grievances." *Id.* ¶ 41. Interior withheld "[e]xtremely detailed health-related information about a single SOL employee . . . from one document." *Id.* ¶ 42. It further withheld "[t]he names of relatives of an SOL employee, the name and familial status of a relative of an individual writing to a SOL employee, the nature of [the] familial relationship between an individual unrelated to the Department and another SOL employee, and the identity and time and means of death of a recently[ ]deceased individual who was related to an SOL employee." *Id.* ¶ 43. Finally, Interior

has withheld information as to employees' "personal appointments and personal reasons for

taking leave." *Id.* ¶ 44.  The Court concludes that the Julka Declaration supports Interior's

decision to withhold the specified information pursuant to Exemption 6.  *See U.S. Dep't of State*

*v. Wash. Post Co.*, 456 U.S. 595, 596 n.1, 601–02 (1982) (holding that Exemption 6 applies to

information contained in "personnel and medical files and similar files," which include files that

"appl[y] to a particular individual").  Ms. Menifee's vague, unsupported arguments to the

contrary—for example, that "the privacy interest in this matter was that of [her]," Pl. MSJ Supp.

Opp. at 5—are not enough to compel a contrary conclusion.  *See Schoenman*, 573 F. Supp. 2d at

134 ("[A] plaintiff pursuing an action under FOIA must establish that either: (1) the Vaughn

index does not establish that the documents were properly withheld; (2) the agency has

improperly claimed an exemption as a matter of law; or (3) the agency has failed to segregate

and disclose all nonexempt material in the requested documents." (citations omitted)).

> Further, Ms. Menifee offers unsupported assertions that Interior is withholding e-

mails to protect Mr. Jackson and that Interior "withheld information simply because [it] could do

so."  Pl. MSJ Supp. Opp. at 5.  She has proffered no facts to contradict Interior's assertion that

the redacted information falls outside the scope of her requests. The privacy interests at stake are

not Ms. Menifee's but those of the other Interior employees, and the public interest against

which those privacy interests are balanced is not Ms. Menifee's individual matters but the

general public interest in knowing what the government is up to.  *See Nat'l Archives & Records*

*Admin. v. Favish*, 541 U.S. 157, 172 (2004) (observing that the public-privacy balancing of

FOIA "requires [courts] to protect, in the proper degree, the personal privacy of citizens against

the uncontrolled release of information compiled through the power of the State").  Because an

agency has "no obligation to produce information that is not responsive to a FOIA request," there

is no reason for this Court to find these redactions improper, even if not exempted from FOIA disclosure. *See Wilson v. U.S. Dep't of Transp.*, 730 F. Supp. 2d 140, 156 (D.D.C. 2010) (internal citations and quotation marks omitted). The Court concludes that Interior has released responsive records and that its withholdings under Exemptions 5 and 6 were proper.

Finally, the Court must separately examine any issues of segregability, even where the claimed exemption is not contested, to ensure compliance with the FOIA. *Trans-Pacific Policing Agreement v. U.S. Customs Serv.*, 177 F.3d 1022, 1028 (D.C. Cir. 1999). The Julka Declaration states that "no meaningful portions [of the withheld documents] could reasonably be released without destroying the integrity of such document as a whole." Julka Decl. ¶ 47. As discussed above, the Court has reviewed Interior's justifications for its withholdings pursuant to Exemptions 5 and 6 and has concluded that they are proper. Ms. Menifee has neither controverted these assertions by contrary facts nor presented facts of agency bad faith. *See Casey*, 656 F.2d at 738. Therefore, the Court concludes that Interior has satisfied the segregability requirement.

Because Interior has demonstrated that it has met its FOIA obligations and Ms. Menifee has adduced no credible argument or facts to the contrary, the Court will grant Interior's motion for summary judgment.

## IV. CONCLUSION

For the reasons set forth above, the Court will grant Interior's motion to dismiss and motion for summary judgment. Judgment will be entered in favor of Defendants on Ms. Menifee's FOIA claim.

Counts I and V, the claims of defamation and abuse of process will be dismissed with prejudice. Count II, the First Amendment claim, and Count IV, the intentional and

negligent infliction of emotional distress claim, will be dismissed without prejudice.  A memorializing Order accompanies this Opinion.

DATE: March 21, 2013

_____/s/_____
ROSEMARY M. COLLYER
United States District Judge